

FILED
Mar 10 2016, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Greg A. Bouwer
Koransky, Bouwer, and Poracky, P.C.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Benjamin T. Ballou
Preston G. Sisler
Hodges and Davis, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephanie A. Schrage,

*Appellant*,

v.

In the Matter of the Seberger
Living Trust u/t/d April 27,
2009,

*Appellee*.

March 10, 2016

Court of Appeals Case No.
45A03-1506-TR-685

Appeal from the Lake Circuit
Court

The Honorable George C. Paras,
Judge

The Honorable Jewell Harris, Jr.,
Probate Commissioner

Trial Court Cause No.
45C01-1410-TR-11

**Brown, Judge.**

Stephanie A. Schrage ("Schrage") appeals the trial court's order denying her petition to compel the delivery of a complete and unredacted copy of the Audrey R. Seberger Living Trust u/t/d April 27, 2009 (the "Trust"). Schrage raises one issue which we revise and restate as whether Schrage is entitled to a complete copy of the Trust upon request to the trustee. We affirm.

## Facts and Procedural History

The relevant facts are not in dispute. On April 29, 1992, Audrey R. Seberger, as Settlor and initial Trustee, executed the Trust, which she amended and/or restated as follows: on October 14, 1996, by a Restatement of Trust; on January 27, 1999, by an Amendment to the Restatement of Trust; on August 9, 2000, by a Second Amendment to the Restatement of Trust; on March 11, 2003, by a Third Amendment to the Restatement of Trust; on January 25, 2006, by a Second Restatement of the Trust; on April 27, 2009, by a Third Restatement of the Trust; and on August 19, 2009, by an Amendment to the Third Restatement of the Trust.[1] The April 27, 2009 Third Restatement of the Trust "replace[d] and supersede[d] [her] original trust, restated trusts and all prior amendments." Appellant's Appendix at 21. The August 19, 2009 Amendment disinherited Jill R. Schrage, the mother of Schrage, and directed that Schrage receive $25,000. Seberger died on July 11, 2014, and Jack M. O'Drobinak accepted the position of Successor Trustee (the "Trustee").

---

[1] For our purposes, the term "Trust" refers collectively to the 1992 initial trust document, as well as all restatements and amendments listed above.

On August 26, 2014, Schrage by counsel sent a letter to the Trustee requesting a copy of Seberger's will and the Trust. The following day, the Trustee authored a "Notice to Beneficiary" stating that "[a]s a Beneficiary of the Trust, you are entitled to be advised as to the change of Trustees that has taken place in the Trust, and your interest in the Trust, as shown in Exhibit A attached hereto." *Id.* at 192. Exhibit A consisted of one page containing one sentence which stated: "My Trustee shall distribute the sum of $25,000 to each of the then living children of JILL R. SCHRAGE, free of trust." *Id.* at 193. The Notice to Beneficiary advised that

> [a] person must commence a judicial proceeding to contest the validity of a Trust that was revocable at the Settlor's death at the earliest of the following:
>
> > (1) Ninety (90) days from the date you received a copy of the Trust certification and the information contained in this Notice; or
> >
> > (2) Three (3) years after the Settlor's death.

*Id.* at 192.

The Trustee also completed a Trust Certification pursuant to Ind. Code § 30-4-4-5 on that same date which referenced Exhibit A, noted that the Trust was still in existence and had become irrevocable by Seberger's death, and provided the contact information for the Trustee. These documents were sent by the Trustee to Schrage's counsel in a letter dated August 28, 2014. The letter advised that the Trustee was under no obligation to provide a copy of Seberger's will, that as

a matter of courtesy he provided a redacted copy of the Trust, and that "[a] Notice to Beneficiary relating to . . . Schrage[] is also enclosed. I am serving her by sending this document to you as I did not have an address for her to be able to mail it to her directly." *Id.* at 191.

On October 22, 2014, the Trustee filed a Petition for Court Instruction stating in part:

> 10. Article One of the August 19, 2009 Amendment revokes Article Six and Eight of the Trust and, in pertinent part, [Schrage] is a specific distributee of the Trust.
>
> 11. Upon request, [the Trustee] provided a redacted version of the Trust to Schrage showing the specific distribution to Schrage and her siblings.
>
> 12. Subsequently, Schrage requested a complete copy of the Trust, along with all prior Amendments and Restatements.
>
> 13. Pursuant to I.C. § 30-4-3-6(b)(8), the Trustee has a duty, upon the trust becoming irrevocable, by the death of the settlor, and the written request of an income beneficiary or remainderman, to "promptly provide a copy of the complete trust instrument to the income beneficiary or remainderman."
>
> 14. Pursuant to I.C. § 30-4-3-18(a), "[i]f there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court."
>
> 15. There exists reasonable doubt under Indiana statutory and case law as to whether Schrage, a specific distributee of the Trust,

is entitled to a complete copy of the Trust, and all prior
Amendments and Restatements.

*Id.* at 103. That same day the Trustee filed a Petition to Docket Trust with
Court stating in part:

10. That [the Trustee] is requesting to docket the Trust with the
Court because he has contemporaneously herewith filed his
Successor Trustee's Petition for Court Instruction.

* * * * *

12. That the following individuals are beneficiaries of the Trust
and are entitled to notice of these proceedings:

* * * * *

J. Stephanie Schrage, c/o Attorney . . . .

*Id.* at 19.

[6]     On October 31, 2014, Schrage filed a Petition to Compel Trustee to Deliver the
Trust to Schrage (the "Petition to Compel") stating that "the 90 day time period
within which to contest the validity of the Trust" had been triggered by the
Trustee's Notice to Beneficiary sent on August 28, 2014, that the Trustee
continues to not provide a complete and unredacted copy of the Trust, that
under the Trust Code she is a remainder beneficiary, and that accordingly she is
entitled to, upon written request, a complete copy of the Trust. *Id.* at 187.
Schrage requested that the court compel the Trustee to provide her with a

complete and unredacted copy of the Trust and to rule that the ninety-day time period she has to contest the trust's validity does not begin until she is served with a copy of the complete Trust. On November 12, 2014, the Trustee filed a response to Schrage's Petition to Compel, and on April 14, 2015, the Trustee filed a memorandum of law in support of his response. Also, on November 20, 2014, the court entered an order docketing the Trust.[2]

[7] On April 23, 2015, the court held a hearing on all pending petitions.[3] On May 26, 2015, the court entered an order denying Schrage's Petition to Compel and instructed the Trustee "to not provide Schrage with a complete, unredacted copy of the Trust." *Id.* at 16. The court's order reasoned as follows:

> 10. Article One of the August 19, 2009 Amendment revoked Articles Six and Eight of the Trust and, in pertinent part, Schrage is a specific distributee of the Trust.
>
> * * * * *
>
> 19. The language of I.C. §30.4-3-6(b)(8) is clear and unambiguous and only refers to "income beneficiary" and "remainderman". Under the Indiana Trust Code, the term

---

[2] We must assume that the copy of the Trust which was docketed with the court was a redacted version which also appears in the appellant's appendix. A complete copy of the Trust was not included in the record on appeal.

[3] We note that the April 23, 2015 hearing concerned matters not only under this cause number, but also under cause number 45C01-1411-TR-13 ("Cause No. 13"). Schrage appealed the court's orders issued in Cause No. 13 under appellate cause number 45A04-1506-TR-686. By separate decision in that appeal, we reverse in Schrage's favor the trial court's grant of a motion to dismiss filed under Ind. Trial Rule 12(B)(6) and remand for further proceedings. *Schrage v. The Audrey R. Seberger Living Trust u/t/d April 27, 2009* (filed March 10, 2016), Ind. App. No. 45A04-1506-TR-686 ("Cause No. 686").

"beneficiary" includes an "income beneficiary" and a "remainder beneficiary". I.C. §30-2-14-2. "Income beneficiary" is defined as a "person to whom net income of a trust is or may be payable." I.C. §30-2-14-5. "Remainder beneficiary" is defined as "a person entitled to receive principal when an income interest ends." I.C. §30-2-14-11. "Remainderman" is defined as "a beneficiary entitled to principal, including income which has been accumulated and added to the principal." I.C. §30.4-1.2(15). Within the definition of "remainderman", "principal" is defined as "property that is held in trust for distribution to a remainder beneficiary when the trust terminates or that will remain perpetually vested in the trustee." I.C. §30-2-14-10.

20. Schrage is not an "income beneficiary" as net income of the Trust is not payable to her. Moreover, Schrage is not a "remainderman" as she is not entitled to principal as that term is defined in I.C. §30-2-14-10. Instead, Schrage is a specific distributee of the Trust and entitled to a cash distribution prior to any disbursements of income and principal and prior to termination of the trust.

21. Like a "specific bequest" or "specific devise", Black's Law Dictionary defines the same as "[a] testamentary gift of specific personal property . . . or of a specific amount of cash."

22. In addition, the Internal Revenue Code provides that, with exceptions, amounts distributed to beneficiaries are includable in said beneficiaries' gross income. I.R.C. §§ 662(a), 663(a)(1). Recipients of specific distributions, like Schrage, are excluded from receiving distributable net income. I.R.C. §663(a)(1) (excluding "[a]ny amount which, under the terms of the governing instrument, is properly paid or credited as a gift or bequest of a specific sum of money or of specific property and which is paid or credited all at once or in not more than 3 installments"). Under the Internal Revenue Code, Schrage would not be considered an "income beneficiary" or a

"remainderman"/"remainder beneficiary" and would not receive a Schedule K-l as a result of [the Trustee] filing the necessary fiduciary income tax returns (Forms 1041 and IT-41) on behalf of the Trust.

23. Ind. Code §30-4-3-6(b)(8) is silent with regard to the rights of a specific distributee to obtain a complete copy of a trust. If the legislature intended for a specific distributee to obtain a complete copy of a trust, it could have included specific language in I.C. §30-4-3-6(b) to indicate that intent. However, the legislature did not do so, and the Court recognizes this omission in the statute. *See Ross v. Ind. State Bd. of Nursing*, 790 N.E.2d 110, 119 (Ind. Ct. App. 2003) (explaining that one rule of statutory construction is that it is just as important to recognize what the statute does not say as it is to recognize what it does say).

24. Schrage cites *Marshall & Ilsley Trust Co., NA. v. Woodward*, 848 N.E.2d 1175, 1180-81 (Ind. Ct. App. 2006) and argues that because her payment will come from the principal of the Trust, she is a "remainderman" as defined in I.C. §30-4-1-2(15). *Marshall* is clearly distinguishable from this case as it involved the right of a remote named contingent beneficiary to receive an accounting, not the right of a specific distributee to receive a complete and unredacted copy of a trust. . . .

25. Under the plain and ordinary meaning of "remainderman" and "remainder beneficiary" set forth under Indiana law, Schrage, a specific distributee, is not entitled to a complete copy of the Trust, including all prior Amendments and Restatements.

*Id.* at 11, 13-16.

## Discussion

[8]  The issue is whether Schrage is entitled to a complete copy of the Trust upon request to the Trustee, which requires this Court to interpret certain statutes of the Indiana Code. We review an issue of statutory interpretation *de novo*. *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012). "Clear and unambiguous statutes leave no room for judicial construction." *Basileh v. Alghusain*, 912 N.E.2d 814, 821 (Ind. 2009). But when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. *Id.* If the statutory language is clear and unambiguous, we require only that the words and phrases it contains are given their plain, ordinary, and usual meanings to determine and implement the legislature's intent. *State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 297 (Ind. 2008), *reh'g denied*. If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind. 2002). We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Mayes v. Second Injury Fund*, 888 N.E.2d 773, 776 (Ind. 2008).

[9]  This Court has observed that "Title 30 of the Indiana Code deals with trusts and fiduciaries," in which "Article 4 is the Trust Code and Chapter 14 of Article 2 is the Uniform Principal and Income Act (UPIA)." *Marshall & Ilsley*

*Trust Co., N.A. v. Woodward*, 848 N.E.2d 1175, 1178 (Ind. Ct. App. 2006) (footnotes omitted). "A trust is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Ind. Code § 30-4-1-1(a). The Trust Code defines beneficiary by reference to the UPIA. Ind. Code § 30-4-1-2. Under the UPIA definition, a trust beneficiary includes "an income beneficiary, and a remainder beneficiary." Ind. Code § 30-2-14-2(2). An income beneficiary means "a person to whom net income of a trust is or may be payable." Ind. Code § 30-2-14-5. A remainder beneficiary is defined as "a person entitled to receive principal when an income interest ends."[4] Ind. Code § 30-2-14-11. Income interest means "the right of an income beneficiary to receive all or part of net income," whether the distribution is mandatory or discretionary. Ind. Code § 30-2-14-6. "An income interest ends on the day before an income beneficiary dies or another terminating event occurs, or on the last day of a period during which there is no beneficiary to whom a trustee may distribute income." Ind. Code § 30-2-14-20. Ind. Code § 30-2-14-10 defines the term "principal" as "property that is held in

---

[4] As observed in *Marshall & Ilsley Trust Co.*, the Indiana Trust Code also contains a definitional section for the term remainderman,

> which is not used elsewhere in the statutes, but often appears in case law. The Trust Code Study Commission Comments to Ind. Code § 30-4-1-2 indicate the "definitions of income beneficiary and remainderman continue those found in IC 1971, 30-2-3-1." The Trust Code was amended in 2002 to reflect, in part, the adoption of the UPIA and by reference includes the definition of a remainder beneficiary. A remainderman is "a beneficiary entitled to principal, including income which has been accumulated and added to the principal." Ind. Code § 30-4-1-2(15).

848 N.E.2d at 1178 n.8.

trust for distribution to a remainder beneficiary when the trust terminates or that will remain perpetually vested in the trustee."[5]

[10] Also, Ind. Code § 30-4-3-6, which lists the duties of the trustee, states in relevant part that:

> (b) . . . the trustee also has a duty to do the following:
>
> > (8) Upon:
> >
> > > (A) the trust becoming irrevocable:
> > >
> > > > (i) by the terms of the trust instrument; or
> > > >
> > > > (ii) by the death of the settlor; and
> > >
> > > (B) the written request of an income beneficiary or remainderman;
> >
> > promptly provide a copy of the complete trust instrument
> > to the income beneficiary or remainderman.

[11] The Trust Code "shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust." Ind. Code § 30-4-1-3. If there is a conflict, "the terms of the trust shall control unless the

---

[5] The relevant section of the Trust Code, Ind. Code § 30-4-1-2(13), provides that "'[p]rincipal' has the meaning set forth in IC 30-2-14-10."

rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." *Id.*

[12]     Schrage begins by noting that Ind. Code § 30-4-3-6 states the duties of the trustee and that subsection (b)(8) specifically provides that, upon the trust becoming irrevocable and written request by an income beneficiary or remainderman, the trustee must promptly provide a complete copy of the trust instrument. She argues that she is a remainderman and that accordingly she is entitled to a complete copy of the Trust upon written request to the Trustee. She asserts that "[a] trust consists of income or principal," that principal "is any property held in trust for distribution when the trust terminates" and may generate income which becomes principal if not distributed, and that under the terms of the Trust she is entitled to principal from the Trust. Appellant's Brief at 6. She refers to the Trustee's position that "a specific distribution is not income or principal" which she says "urges a third category of trust property but does not define it or refer to the Indiana Trust Code, because a third category does not exist." *Id.* She states that the trustee's assertion that a remainderman is a person entitled to residue of what remains after all income and specific distributions are made, does not comport with the language of Ind. Code § 30-2-14-11. She notes that the Trust Code uses only two categories of beneficiary, an income beneficiary and a remainderman, and to the extent the Trustee and the court in its order suggest that her interest falls into a third category of a "specific distributee," a "specific distributee is a type of remainderman." *Id.* at 7.

[13]   The Trustee contends that Schrage is not a remainderman because she is not entitled to principal, which "is held for distribution to remainder beneficiaries *when a trust terminates*." Appellee's Brief at 3. The Trustee posits that Schrage is a specific distributee who is "entitled to a cash distribution prior to any disbursements of income and principal and prior to termination of the Trust," noting that the Trust Code is silent regarding the rights of specific distributees. *Id.* at 3-4. He argues that Seberger's death did not eliminate "all potential income interests under the Trust" and that "Schrage is not a 'remainder beneficiary' because her entitlement to the distribution is vested as a result of Seberger's death, not as a result of an income beneficiary's entitlement ending." *Id.* at 5. The Trustee refers to certain provisions of the Internal Revenue Code which, he says, demonstrate that Schrage's argument should not be accepted. The Trustee states that "[t]he interest of a specific distributee is completely different from that of a 'remainderman'/'remainder beneficiary' in that the latter's interest is in the administration of the trust for the preservation of assets" while "[a] specific distributee receives a cash distribution prior to any distribution of income or principal . . . ." *Id.* at 7.

[14]   In *Marshall & Ilsley Trust Co., N.A. v. Woodward*, discussed by the parties in their briefs and the court in its order, the trustee appealed from a grant of summary judgment in favor of Robert G. Woodward, Sr., for an accounting of a trust created by his son (the "Grantor"). 848 N.E.2d at 1176-1177. The terms of the trust, funded by certain life insurance policies held by Grantor upon Grantor's death, provided that Grantor's wife would receive distributions of income and

principal at the trustee's discretion, that if she remarried she would cease to be a trust beneficiary, and that the trust would then be held for the benefit of Grantor's three sons. *Id.* at 1177. The trust also named contingent beneficiaries in the event that all of Grantor's sons died without leaving issue before the trust was distributed: "Woodward if he survives, but if he does not, the St. Benedict Catholic Church in Evansville." *Id.* At one point, Woodward became the successor trustee, and upon his resignation the Marshall and Ilsley Trust Company was named trustee. *Id.* Woodward later sought an accounting due to concern with the administration of the trust, but his request was denied. *Id.* The trial court granted summary judgment in Woodward's favor, finding that he was a beneficiary as defined by Ind. Code § 30-2-14-11 and was entitled to an accounting under Ind. Code § 30-4-3-6. *Id.*

[15] On appeal, the trustee first asserted that only the Grantor's sons had the right to an accounting under the terms of the trust, but we disagreed with its interpretation of the document. *Id.* at 1179-1180. We next turned to the parties' arguments under the relevant statutes, in which the trustee argued that Woodward was neither an income beneficiary, nor a remainder beneficiary, and was therefore not entitled to an accounting under Ind. Code § 30-4-3-6(b)(7).[6] *Id.* at 1180. We observed that "[a]lthough his right to the trust

---

[6] Ind. Code § 30-4-3-6(b)(7) provides that, unless the trust terms or Ind. Code § 30-4-3-1.3 provide otherwise, the trustee also has the duty to:

Keep the following beneficiaries reasonably informed about the administration of the trust and of the material facts necessary for the beneficiaries to protect their interests:

principal is contingent on his childless grandchildren predeceasing him, Woodward is within the definition of a remainder beneficiary under the statute," and proceeded to consider "whether 'remainder beneficiary' includes both vested and contingent beneficiaries," noting that the statute is not clear on that issue. *Id.* at 1181. Relying on analysis of the Uniform Trust Code and the UPIA, as well as other policy considerations, we found that the statute contemplated contingent beneficiaries who are named in the trust document as being entitled to an accounting and affirmed the trial court's order. *Id.* at 1184.

[16] Turning to the Trust document, we note that the April 27, 2009 Third Restatement of the Trust, which superseded previous versions of the Trust, contains twelve articles detailing the specifics of the Trust. Article Five is titled "Administration at Death of the Trustor" and discusses various payments the Trust shall make related to expenses, debts, claims, and taxes associated with the Trust Estate. Appellant's Appendix at 33. Article Six is titled "Specific Distributions of Trust Property," and Section 5 of that Article details the

---

(A) A current income beneficiary.

(B) A beneficiary who will become an income beneficiary upon the expiration of the term of the current income beneficiary, if the trust has become irrevocable by:

(i) the terms of the trust instrument; or

(ii) the death of the settlor.

A trustee satisfies the requirements of this subdivision by providing a beneficiary described in clause (A) or (B), upon the beneficiary's written request, access to the trust's accounting and financial records concerning the administration of trust property and the administration of the trust.

specific distributions designated by Seberger.[7] *Id.* at 36. Article Eight of the Trust is titled "Division and Distribution of Trust Property," Section 1 of which is titled "Division of Trust Property Into Shares." *Id.* at 41. The preamble of that section states:

> My Trustee shall divide, into separate shares, all of my Trust Estate not previously distributed under the preceding Articles of my Trust Agreement (and for purposes of determining such division and subsequent distributions shall take into account the exclusion of any descendant as may be directed in Article One) as follows: . . . .

*Id.* Below that preamble, the Trust contains headings titled "Beneficiary Name" and "Share," in which the specific beneficiaries and shares have been redacted. *Id.* at 41-46.

[17] The August 19, 2009 Amendment to the Third Restatement of Trust made changes to the language of both Articles Six and Eight. Under Article Six, Section 5, which details specific distributions of Trust property, the Trust in the Amendment instructs that "[m]y Trustee shall distribute the sum of $25,000 to each of the then living children of JILL R. SCHRAGE, free of trust." *Id.* at 90. Also, in Article Eight, Section 7, which is titled "Unequal Distribution / Disinheritance," the Trust states specifically that "no provision" is made for Schrage's mother Jill "or any such other relative, friend, or heir at law of mine,

---

[7] The details of the specific distributions listed in the Trust have been redacted. The appendix contains three pages denoting redacted material.

other than as specifically set forth under the terms of this my Trust" and that this was "for reasons best known to" Seberger. *Id.* at 100. Thus, Schrage's distribution was set forth in Article Six, covering specific distributions, and she was not listed as a beneficiary in Article Eight.[8]

[18] Regarding the relevant statutes, we note that a remainder beneficiary is "a person entitled to receive principal when an income interest ends," Ind. Code § 30-2-14-11, in which principal is "property that is held in trust for distribution to a remainder beneficiary *when the trust terminate*s or that will remain perpetually vested in the trustee." Ind. Code § 30-2-14-10 (emphasis added). Thus, principal is not merely assets held in trust, but rather assets held for distribution when the trust terminates.

[19] Further clarity is gained by examining Ind. Code § 30-4-4-5, which governs the certification of trust such as was provided to Schrage by the Trustee. That statute begins by providing that "[a] trustee may furnish to a person other than a beneficiary a certification of trust instead of a copy of the trust instrument" and notes the relevant information which must be contained therein. Ind. Code § 30-4-4-5(a). It further provides:

---

[8] We observe that the Trustee sent Schrage a document titled "Notice to Beneficiary" which referred to Schrage as "a Beneficiary of the Trust . . . ." Appellant's Appendix at 192. We do not believe, however, that this characterization by the Trustee has legal consequence where the Trust itself does not identify Schrage as a remainder beneficiary.

(e) A recipient of a certification of trust may require the trustee to furnish copies of excerpts from the original trust instrument and later amendments that:

(1) designate the trustee; and

(2) confer on the trustee the power to act in a pending transaction in which the recipient has an interest.

Ind. Code § 30-4-4-5(e). Thus, Subsection 5(e) contemplates that simply because a person has an interest in the trust does not necessarily make that person a beneficiary of the trust and that such persons are entitled to excerpts of the trust related to their interest.[9]

[20] In examining the policy considerations involved, we are persuaded by the Trustee's suggestion that the right of a remainder beneficiary to obtain a complete copy of a trust is based upon such beneficiary's interest in the administration of the trust for the preservation of assets, in which the remainder beneficiary is typically entitled to a share of the trust principal. Specific distributees such as Schrage, by contrast, are entitled to a specific sum of money or other unique property whereby the management of trust assets would not affect the amount of the distribution. We also observe that Black's Law

---

[9] We note that Ind. Code § 30-4-4-5(i) provides that "[t]his section does not limit the right of a person to obtain a copy of the trust instrument in a judicial proceeding concerning the trust." As discussed in Cause No. 686 referenced above, the trial court hearing Schrage's complaint has the discretion to order that the Trust be docketed pursuant to Ind. Code § 30-4-6-7(a) "*[i]f* it is necessary to the determination of any issue of law or fact in a proceeding, the *court may direct* that a copy of the trust instrument, if any, be kept in its records." *Schrage*, Ind. App. No. 45A04-1506-TR-686, slip op. at 20 (March 10, 2016).

Dictionary contains a definition concerning the law of wills and, in its entry for "remainder bequest," directs the reader to the definition of "residuary bequest," which it defines as "a bequest of the remainder of the testator's estate after the payment of the debts, legacies, and *specific bequests*." BLACK'S LAW DICTIONARY 189 (10th ed. 2014) (emphasis added). Thus, the law of wills groups specific bequests with the payment of debts and other legacies rather than with the concept of remainders.

[21] As noted above, the Trust Code "shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust," and, when conflicts arise, "the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." Ind. Code § 30-4-1-3. Here, Schrage is not listed as a remainder beneficiary in the Trust. She is not entitled to Trust principal, which is to be disbursed when the trust terminates, because there is no indication that the Trust would terminate based upon her specific distribution contained in Article 6. There is no division of assets called to take place in Article 6; rather, the distributions contemplated in that Article are a preamble for the subsequent asset division and Trust termination. Schrage received a certification of trust from the Trustee as a recipient of a specific distribution. Based on that interest alone, she is entitled to nothing further from the Trustee. Accordingly, we conclude that the court did not err in denying Schrage's petition.

## *Conclusion*

[22] For the foregoing reasons, we affirm the trial court's order denying Schrage's petition to compel.

[23] Affirmed.


Kirsch, J., and Mathias, J., concur.